## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMIE JACKSON, individually and on behalf of all other similarly-situated citizens of Illinois and the United States, | ) ) ) ) | Case No.: 3:22-cv-01448 (DWD) |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORAL ARGUMENT REQUESTED** |
| DOLE PACKAGED FOODS, LLC, | ) ) | |
| Defendant. | ) ) | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT</u>

FAEGRE DRINKER BIDDLE & REATH LLP

Sarah L. Brew
Tyler A. Young
Rory F. Collins
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Fax: (612) 766-1600
sarah.brew@faegredrinker.com
tyler.young@faegredrinker.com
rory.collins@faegredrinker.com

Ruben I. Gonzalez (Bar No. 6320689)
320 South Canal Street, Suite 3300
Chicago, Illinois 60606
(312) 569-1000
ruben.gonzalez@faegredrinker.com

*Attorneys for Defendant Dole Packaged Foods, LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 5

I.      PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT REASONABLE
CONSUMERS WOULD BE DECEIVED BY THE PRODUCTS' LABELS. ............... 5

      A.      Reasonable consumers understand that "in 100% fruit juice" refers to the
medium in which the fruit is packed. .................................................................. 6

      B.      The presence of ascorbic acid and citric acid is not material to reasonable
consumers. ......................................................................................................... 9

II.     PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT DOLE'S LABELING
PRACTICES ARE UNFAIR. ..................................................................................... 12

      A.      The Products' labels do not offend Illinois public policy. ................................ 12

      B.      The Products are not immoral, unethical, oppressive, or unscrupulous. ............. 14

      C.      The Products do not cause substantial injury to consumers. .............................. 14

III.    PLAINTIFF FAILS TO PLAUSIBLY ALLEGE ACTUAL DAMAGE. ...................... 15

IV.    PLAINTIFF'S COMMON-LAW CLAIMS ALSO FAIL AS A MATTER OF
LAW. ........................................................................................................................ 17

V.     CERTAIN ASPECTS OF THE COMPLAINT FAIL BECAUSE PLAINTIFF
LACKS ARTICLE III STANDING. ........................................................................... 18

      A.      Plaintiff lacks standing to sue for Products she did not purchase. ..................... 18

      B.      Plaintiff lacks standing to seek injunctive relief. ............................................. 18

CONCLUSION .............................................................................................................. 19

i

## **TABLE OF AUTHORITIES**

**Page(s)**

C<small>ASES</small>

*Anthony v. Country Life Mtg., LLC.*,
   70 F. App'x 379 (7th Cir. 2003) ......................................................................13, 14

*Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*,
   493 F.3d 841 (7th Cir. 2007) ...................................................................................17

*Babaian v. Dunkin' Brands Grp. Inc.*,
   2018 U.S. Dist. LEXIS 98673 (C.D. Cal. June 12, 2018) .......................................16

*Baldwin v. Star Sci., Inc.*,
   78 F. Supp. 3d 724 (N.D. Ill. 2015) ........................................................................17

*Batson v. Live Nation Ent., Inc.*,
   746 F.3d 827 (7th Cir. 2014) ......................................................................12, 14, 15

*Beardsall v. CVS Pharmacy, Inc.*,
   953 F.3d 969 (7th Cir. 2020) .....................................................................................5

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ...................................................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................10

*Bell v. Publix Super Mkts., Inc.*,
   982 F.3d 468 (7th Cir. 2020) ...................................................................7, 9, 10, 11

*Bober v. Glaxo Wellcome PLC*,
   246 F.3d 934 (7th Cir. 2001) .....................................................................................5

*Borenkoff v. Buffalo Wild Wings, Inc.*,
   2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ...........................................................16

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) ...................................................................................19

*Chiappetta v. Kellogg Sales Co.*,
   2022 WL 602505 (N.D. Ill. Mar. 1, 2022)................................................................1

*Cleary v. Philip Morris Inc.*,
   656 F.3d 511 (7th Cir. 2011) ...................................................................................17

*Colella v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...................................................................16

*Connick v. Suzuki Motor Co.*,
    675 N.E.2d 584 (Ill. 1996) ......................................................................................5

*Cosgrove v. Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021) ......................................................................7

*Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*,
    250 F.3d 570 (7th Cir. 2001) ................................................................................5, 9

*DaCorta v. AM Retail Grp., Inc.*,
    2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ..........................................................16

*Davis v. G.N. Mortg. Corp.*,
    396 F.3d 869 (7th Cir. 2005) ...................................................................................7

*De Bouse v. Bayer AG*,
    922 N.E.2d 309 (Ill. 2009) .....................................................................................16

*Floyd v. Pepperidge Farm, Inc.*,
    --- F. Supp. 3d ----, 2022 WL 203071 (S.D. Ill. Jan. 24, 2022) ........................1, 19

*Goplin v. WeConnect, Inc.*,
    893 F.3d 488 (7th Cir. 2018) ...................................................................................6

*Harris v. McDonald's Corp.*,
    2021 WL 2172833 (N.D. Cal. Mar. 24, 2021) .......................................................16

*Hauger v. Dollar Gen. Corp.*,
    2022 WL 2532487 (C.D. Ill. July 7, 2022) ..............................................................1

*Horist v. Sudler & Co.*,
    941 F.3d 274 (7th Cir. 2019) ...............................................................................5, 12

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) .......................................................................17

*Kremers v. Coca-Cola Co.*,
    712 F. Supp. 2d 759 (S.D. Ill. 2010) ...........................................................13, 14, 15

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................................18

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ......................................................................................8

*Munoz v. Seventh Avenue, Inc.*,
    2004 WL 1593906 (N.D. Ill. July 15, 2004)............................................................2

*Payton v. Cnty. of Kane*,
    308 F.3d 673 (7th Cir. 2002) ...............................................................................18

*Phillips v. Double Down Interactive LLC*,
    173 F. Supp. 3d 731 (N.D. Ill. 2016) ..............................................................12, 13

*Pichardo v. Only What You Need, Inc.*,
    2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) ........................................................7

*Reed v. Farmers Ins. Grp.*,
    720 N.E.2d 1052 (Ill. 1999) ................................................................................12

*Robinson v. Toyota Motor Credit Corp.*,
    775 N.E.2d 951 (Ill. 2002) .............................................................................12, 14

*Ryan v. Wersi Elec. GmbH & Co.*,
    59 F.3d 52 (7th Cir. 1995) ....................................................................................10

*Saunders v. Michigan Ave. Nat'l Bank*,
    662 N.E.2d 602 (Ill. 1996) ...................................................................................14

*Schneider v. Mott's LLP*,
    No. 3:21-cv-01251 (S.D. Ill. Oct. 12, 2021) ..........................................................1

*Spector v. Mondelez Int'l, Inc.*,
    178 F. Supp. 3d 657 (N.D. Ill. Mar. 31, 2016) ....................................................17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .............................................................................................18

*Stamelos v. Del Monte Foods Inc.*,
    No. 2222-CC00895 (Mo. Cir. Ct., City of St. Louis June 1, 2022)...........................1

*Steele v. Wegmans Food Mkts., Inc.*,
    472 F. Supp. 3d 47 (S.D.N.Y. 2020)....................................................................11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007).............................................................................................2

*Ulrich v. Probalance, Inc.*,
    2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) .......................................................19

*W. Ry. Devices Corp. v. Lusida Rubber Prods., Inc.*,
    2006 WL 1697119 (N.D. Ill. June 13, 2006) ........................................................15

*Willard v. Tropicana Mfg. Co., Inc.*,
  2021 WL 6197079 (N.D. Ill. Dec. 30, 2021) .......................................................................18

*Wynn v. Topco Assocs., LLC*,
  2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ..........................................................................10

*Zahora v. Orgain LLC*,
  2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) .............................................................5, 17, 19

**STATUTES, RULES & REGULATIONS**

21 C.F.R. § 101.4 .........................................................................................................................3

21 C.F.R. § 101.30 .......................................................................................................................12

21 C.F.R. § 145 *et seq.* ...........................................................................................................7, 8, 12

Fed. R. Evid. 201(b)(2) ...............................................................................................................6

Ill. Comp. Stat. 505/1 *et seq.* ............................................................................................... *passim*

**OTHER AUTHORITIES**

Mayo Clinic Staff, *Drugs and Supplements A to Z: Vitamin C*,
  https://www.mayoclinic.org/drugs-supplements-vitamin-c/art-
  20363932#:~:text=Vitamin%20C%20(ascorbic%20acid)%20is,to%20your%2
  0body's%20healing%20process (last accessed August 4, 2022) ...........................................11

*Mixed Fruit*, Schnucks, https://nourish.schnucks.com/web-
  ext/search?s=mixed%20fruit&set=0 (last accessed August 2, 2022) .......................................6

## INTRODUCTION

This case is about Dole Fruit Bowl® products labeled "in 100% fruit juice" made by Defendant Dole Packaged Foods, LLC ("Dole"). The label indicates—accurately—that the fruit is packed in juice. Consumers understand that this distinguishes these products from similar packaged fruit products that are packed in another medium, like syrup, water, or gelatin. Plaintiff Jamie Jackson, however, claims that the statement is misleading because, in addition to fruit and juice, the products contain tiny amounts of ascorbic acid (vitamin C) and citric acid. She knows the products contain these ingredients because *it says so on the label's ingredients list*.

This case is just the latest in what has become a cottage industry: putative class actions alleging that true statements made on food product labels are misleading based on information disclosed elsewhere on the same label. Indeed, Plaintiff's counsel has filed two other cases that are substantially similar to this one. *See Stamelos v. Del Monte Foods Inc.*, No. 2222-CC00895 (Mo. Cir. Ct., City of St. Louis June 1, 2022) (alleging that packaged pineapple products labeled "in 100% pineapple juice" are deceptive because they contain citric acid); *Schneider v. Mott's LLP*, No. 3:21-cv-01251 (S.D. Ill. Oct. 12, 2021) (alleging that applesauce labeled "made from 100% real fruit" is deceptive because it contains sweeteners and citric acid).

These cases are driven by lawyers, not by what reasonable consumers would find deceptive, and Illinois federal courts regularly dismiss such claims for that reason. *See, e.g.*, *Floyd v. Pepperidge Farm, Inc.*, --- F. Supp. 3d ----, 2022 WL 203071, at *1 (S.D. Ill. Jan. 24, 2022) (granting motion to dismiss because reasonable consumers would not assume that "Golden Butter" crackers do not also contain vegetable oil); *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *1 (N.D. Ill. Mar. 1, 2022) (granting motion to dismiss because reasonable consumers would not think the filling of "Strawberry" Pop-Tarts contains only strawberries); *Hauger v. Dollar Gen. Corp.*, 2022 WL 2532487, at *1 (C.D. Ill. July 7, 2022) (granting motion to dismiss because

reasonable consumers would not be misled to believe that honey and graham flour are the predominant sweetener and flour ingredients in "Honey Graham Crackers").

Plaintiff's claims here also fail as a matter of law. Plaintiff has not plausibly alleged that the statement "in 100% fruit juice," as used in the context of the product labels, is materially misleading to reasonable consumers or constitutes an unfair business practice. Plaintiff also has not plausibly alleged that she suffered any actual injury because of the label statement. These deficiencies doom all of Plaintiff's claims, and the Court should dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) for failure to state a claim. If any claim were to survive, however, the Court should dismiss Plaintiff's claims regarding products she did not purchase and her request for injunctive relief pursuant to Rule 12(b)(1) because she lacks standing to pursue these aspects of the Complaint.

## BACKGROUND

Dole manufactures and sells Fruit Bowl® products through grocery stores and other retailers throughout the United States. Although Plaintiff purchased only a single Dole product, she takes issue with nine of Dole's Fruit Bowls®: Cherry Mixed Fruit, Diced Apples, Diced Pears, Mandarin Oranges, Mixed Fruit, Pineapple Tidbits, Red Grapefruit Sunrise, Tropical Fruit, and Yellow Cling Diced Peaches, each labeled "in 100% fruit juice" (collectively, the "Products"). (Compl. ¶ 1.) An image of the front of the label of the Dole Mixed Fruit product Plaintiff alleges she purchased is reproduced below.[1]

---

[1] With this motion, Dole is filing full and accurate copies of the labels for the Products at issue as Exhibit A to the Declaration of Sarah L. Brew. Plaintiff's Complaint does not include an image of any Product label. However, because the Complaint incorporates the Products' labels by reference, the Court may consider the entire label submitted by Dole. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Munoz v. Seventh Avenue, Inc.*, 2004 WL 1593906, at *1–2 (N.D. Ill. July 15, 2004) (collecting cases).



The label truthfully states that the mixed fruit is "in 100% juice"—it does not state that there are no other ingredients in the Products. The "in 100% fruit juice" statement distinguishes the product from canned and other packaged fruit products—including other Dole Fruit Bowls®— that contain fruit packed "in water" (with or without added sweeteners), "in coconut water," "in syrup," or "in gelatin."

The ingredients list for each of the Products, which lists the ingredients in descending order of predominance by weight, *see* 21 C.F.R. § 101.4, confirms that the Products contain one or more fruit juices from concentrate,[2] and do not contain water, syrup, sugar, or other sweeteners or thickening agents. (Decl. of Sarah L. Brew ("Brew Decl.") Ex. A.) The ingredients list also shows that the Products contain "ascorbic acid (vitamin C) to promote color retention, and citric acid." An image of the ingredients list from Dole's Mixed Fruit, which is typical of the Products, is reproduced below.

---

[2] In most of the Products, this juice is a combination of white grape juice from concentrate and lemon juice from concentrate. Dole's Tropical Fruit contains clarified pineapple juice from concentrate in addition to the above juices, and Dole's Pineapple Tidbits is packed in pineapple juice alone. (Brew Decl. Ex. A.)



Plaintiff Jamie Jackson, on behalf of herself and a putative class, alleges that Dole's representations that the Products are "in 100% fruit juice" are deceptive, unfair, and false because they "lead[ ] Illinois and United States customers to believe that the juice in the container is in fact 100% fruit juice and contains no other added ingredients." (Compl. ¶ 2.) Plaintiff admits that the Products indeed contain "various fruit juices" and <u>does not allege</u> that the Products contain fruit packed in anything other than fruit juice—for example, in water, syrup, or gelatin. (*See id.* at ¶ 3.) Instead, Plaintiff alleges that the presence of miniscule amounts of ascorbic acid and citric acid (the so-called "Added Ingredients") in the Products directly and materially contravenes Dole's representations that the Products contain fruit "in 100% fruit juice." (*Id.* ¶¶ 3, 8.) Plaintiff insists that "[b]ecause the Added Ingredients are not fruit juice, the claim 'in 100% fruit juice' is inaccurate, deceptive, unfair and misleading to purchasers." (*Id.* ¶ 27; *see also id.* ¶¶ 4-10.)

Plaintiff alleges that she purchased Dole's Mixed Fruit Product at Schnucks Market in Belleville, Illinois on numerous occasions "after reviewing the packaging label and noting that it said 'in 100% fruit juice.'" (*Id.* ¶ 13.) Plaintiff alleges that because the Products contain ascorbic and citric acids, reasonable consumers would have paid less for them, or not purchased them at all, "had the truth been known." (*Id.* ¶¶ 11, 28.) Plaintiff asserts claims for deceptive practices (Count I) and unfair practices (Count II) under the Illinois Consumer Fraud and Deceptive Business

Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.* (*Id.* ¶¶ 46-64.) She also asserts claims for breach of warranty (Count III) and unjust enrichment (Count IV) under Illinois common law. (*Id.* ¶¶ 65-78.)

## ARGUMENT

### I.   Plaintiff Fails to Plausibly Allege that Reasonable Consumers Would Be Deceived by the Products' Labels.

The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices" in the conduct of any trade or commerce. 815 Ill. Comp. Stat. 505/2. To prevail on an ICFA claim, "a plaintiff must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Horist v. Sudler & Co.*, 941 F.3d 274, 280 (7th Cir. 2019) (citation and quotation marks omitted).

Under the ICFA, a label is deceptive if it is "likely to mislead a reasonable consumer in a material respect." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). A misrepresentation or omission of fact is "material" if a consumer would have acted differently had they known the information, or if it concerns the type of information consumers would be expected to rely upon when making a decision. *See Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996)). Courts "routinely" dismiss claims that a label is deceptive if the challenged statements would not mislead reasonable consumers. *Zahora v. Orgain LLC*, 2021 WL 5140504, at *3 (N.D. Ill. Nov. 4, 2021) (dismissing ICFA, negligent misrepresentation, express and implied warranty, fraud, and unjust enrichment claims); *see Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001) (affirming dismissal of ICFA claim).

Plaintiff's ICFA claim for "deceptive practices" is premised on her belief that a fruit

product packed "in 100% fruit juice" would not contain added ascorbic acid or citric acid. (Compl. ¶¶ 52, 62.) But this belief is neither plausible nor material to reasonable consumers. First, reasonable consumers would not read the challenged statement, in context, to mean that the product contains nothing but fruit and fruit juice. Rather, reasonable consumers understand this statement to mean that the medium in which the fruit is packed is "100% fruit juice" as opposed to water, syrup, gelatin, or some other substance—as is common in alternative products that are typically present on the same grocery store shelves. Second, Plaintiff failed to allege any facts plausibly suggesting that the presence of minute amounts of ascorbic acid and citric acid would be material to reasonable consumers. Accordingly, this Court should dismiss Count I for deceptive practices under the ICFA.

### A. Reasonable consumers understand that "in 100% fruit juice" refers to the medium in which the fruit is packed.

The Products' front labels state that each contains fruit "in 100% fruit juice." This statement is true because each of the Products contains fruit packed in a mixture of white grape and lemon juices (and/or pineapple juice, in the case of Dole's Tropical Fruit and Pineapple Tidbits products). As a result, Plaintiff's insistence that the Products' label is misleading runs contrary to any reasonable interpretation of the label's language.

Consumers choose between a wide variety of packaged fruit products sold in glass, can, or plastic containers. These fruit products come packed in many different substances, including juice, water, syrup, coconut water, gelatin, or even some combination of these, which the labels of the products call out.[3] Given this context, a reasonable consumer exercising common sense would

---

[3] A search for "mixed fruit" products available at Schnucks in Belleville, Illinois, where Plaintiff alleges she purchased the Mixed Fruit Product (Compl. ¶ 13), shows the variety of products available. *Search results for: Mixed Fruit*, Schnucks, https://nourish.schnucks.com/web-ext/search?s=mixed%20fruit&set=0 (last accessed August 2, 2022). A copy of this webpage is attached as Exhibit B to the Brew Declaration. The Court should take judicial notice of the

understand that the statement "in 100% fruit juice" refers only to the *medium* in which the fruit is packed and is not a comprehensive statement of the Products' ingredients. This context is key. Courts considering "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020); *see also Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) ("[W]hen analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff.").

Courts have dismissed similar complaints where the representation served to distinguish one product from a variety of similar products. *See, e.g., Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) (finding no misrepresentation as a matter of law where the term "Vanilla" "describe[d] a flavor more than an ingredient—more particularly, to distinguish the vanilla flavor from Defendant's other chai tea latte flavors"). The Court should do the same here.

This conclusion is reinforced by FDA regulations that govern similar fruit products and which shape the way reasonable consumers understand the Products at issue. Specifically, the Products' labels are consistent with the FDA's labeling requirements for **canned** fruits. *See* 21 C.F.R. § 145 *et seq*. These federal regulations establish standards of identity for many canned fruit products familiar to consumers that are comparable to the plastic cup Products at issue in this action. *See, e.g.,* 21 C.F.R. §§ 145.135 (fruit cocktail), 145.145 (grapefruit), 145.170 (peaches),

---

webpage because its contents "can be accurately and readily determined" and are "not subject to reasonable dispute." Fed. R. Evid. 201(b)(2); *see Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (district court "did not violate the rules of judicial notice" by reviewing website cited in the party's briefing); *see also Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775, at *6 (S.D.N.Y. Oct. 27, 2020) ("[T]he Court can take judicial notice that the grocery store shelves are stocked with many vanilla-flavored beverages[.]").

145.175 (pears), 145.180 (pineapple).

For example, under the regulation governing "canned fruit cocktail," producers are permitted to can fruits in a "packing medium," defined as water, fruit juices, or a combination of the two. *See* 21 C.F.R. § 145.135(a)(3)(i).[4] The regulations require a producer to note whether and to what extent the chosen packing medium has been sweetened and defines a list of sweetening designations ranging from "slightly sweetened" (or "extra light sirup/syrup") to "extra heavily sweetened" (or "extra heavy sirup/syrup"). 21 C.F.R. § 145.135(a)(3)(ii). The regulations state that, on the product label, "[t]he name of the packing medium … *preceded by 'In' or 'Packed in'* shall be included as part of the name or in close proximity to the name of the food" along with a disclosure of the amount of added sweetening, if any. 21 C.F.R. § 145.135(a)(4)(ii) (emphasis added); *see also, e.g.,* 21 C.F.R. §§ 145.175(a)(4)(ii) (same for pears). Depending on the type of fruit, these regulations permit several additional ingredients such as natural and artificial flavors; spice; vinegar, lemon juice, or organic acids; and ascorbic acid to be present in the finished product. *See, e.g.,* 21 C.F.R. § 145.135(a)(1). But FDA's regulations do <u>not</u> require that any of these additional ingredients be included in the "packed in" phrase declaring the packing medium and sweetening designation.

It is in this specific context—with the Products on grocery store shelves with other fruit products packed in other media, and with traditionally labeled canned fruit products typically directly adjacent—that consumers see and understand the meaning of "in 100% fruit juice." *See, e.g., Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (affirming dismissal where "other

---

[4] The regulations for the different types of canned fruits are substantially identical with respect to the permitted packing media, sweetening agents and designations, and labeling requirements. *Compare, e.g.,* 21 C.F.R. § 145.135(a)(3)-(4) (packing media and labeling requirements for fruit cocktail), *with id. at* § 145.180(a)(3)-(5) (same for pineapple, but with added designations for "heavy pack" and "solid pack" versions of product).

available information about Trader Joe's Manuka Honey would quickly dissuade a reasonable consumer from the belief that [it] was derived from 100% Manuka flower nectar"); *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229-30 (9th Cir. 2019) (affirming dismissal where context established no reasonable consumer would assume "diet" soft drinks promised weight loss, as opposed to simply containing fewer calories than "regular" soft drinks). Reasonable consumers understand that they are selecting a product packed in juice; they do not interpret the label to mean that the Products do not also have minute levels of ascorbic acid and citric acid.

Plaintiff may argue that the mere presence of a "100%" statement is actionable under the Seventh Circuit's decision in *Bell*, 982 F.3d 468. Not so. *Bell* "stand[s] by the general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Id.* at 477 (collecting cases). While *Bell* concluded that a label stating "100% Grated Parmesan Cheese" could be misleading when the product contained non-cheese ingredients because the label could plausibly be read "that '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated," *id*. at 476-77, that holding is not applicable here. Unlike the label in *Bell*, there is no plausible case for confusion regarding the "in 100% fruit juice" statement on the Products' labels: read in context, it clearly only refers to the ***medium*** in which the fruit is packed.

### B.  The presence of ascorbic acid and citric acid is not material to reasonable consumers.

Even if reasonable consumers understood the phrase "in 100% fruit juice" to mean that the Products contained no ascorbic or citric acid, Plaintiff's ICFA claim also fails because Plaintiff has not plausibly alleged the presence of these substances is material to consumers. As explained above, a misrepresentation or omission of fact is only material if the party to whom it was made would have acted differently had they known the truth. *See Cozzi*, 250 F.3d at 576. In other words,

"the misrepresented fact 'must be essential to the transaction between the parties.'" *Id.* (quoting *Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 54 (7th Cir. 1995)).

Plaintiff fails to allege specific facts supporting her premise that reasonable consumers care whether the Products contain added ascorbic acid or citric acid. For example, Plaintiff cites no articles investigating customer preferences, references no market or industry analyses, and identifies no risks or concerns associated with ascorbic or citric acid. *See Bell*, 982 F.3d at 480 ("Plaintiffs allege in their complaints that they have actually conducted consumer surveys showing that 85 to 95 percent of consumers understood" the challenged statement the same way the plaintiffs did). Instead, Plaintiff simply asserts that consumers like her "are interested in purchasing products without added ingredients," (Compl. ¶ 57), though a consumer with that goal would presumably read the ingredients list. She also claims, again without supporting facts, that reasonable consumers would have paid less for the Products, "or not purchased them at all" had they known the truth. (*Id.* at ¶ 28.) Plaintiff also simply repeats the applicable legal standard in asserting that the alleged misrepresentation "is material in that it concerns the type of information upon which a reasonable consumer would be expected to rely in deciding whether to purchase the Fruit." (*Id.* at ¶ 26; *see also id.* at ¶ 50.)

This is precisely the sort of "formulaic recitation of the elements of a cause of action" that no longer suffices to state a claim for relief and fail to "nudge[ ]" Plaintiff's claims "from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). *See, e.g., Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021) (dismissing claims regarding vanilla almond milk where allegations about consumer expectations were conclusory and plaintiff did not allege consumer survey data or other facts),.

In fact, the Complaint itself suggests that reasonable consumers would ***not*** find the

presence of insignificant amounts of added ascorbic acid and citric acid material to their purchasing decisions. The Complaint recognizes that some amounts of ascorbic and citric acid may *already be present* in the fruit-based Products. For example, Plaintiff admits that "ascorbic acid may be a source of vitamin C"[5] and that "citric acid may be found naturally in citrus fruits." (Compl. ¶¶ 4, 6.) It is common knowledge that both vitamin C (ascorbic acid) and citric acid are found naturally in fruit and fruit juice, particularly citrus fruits like lemons. It is therefore implausible that any reasonable consumer would care whether the Products contained tiny amounts of "added" ascorbic and citric acids.

In addition, as discussed above, reasonable consumers understand that there may be other added ingredients in canned and other packaged fruit products apart from the front-of-pack statement declaring the medium in which they are packed (juice, water, syrup of some mixture). If reasonable consumers "are interested in purchasing products without added ingredients," as Plaintiff alleges (Compl. ¶ 57), and she purchased the product on numerous occasions "after reviewing the packaging label" (Compl. ¶ 13), presumably she would have read the ingredients list to ensure that the product did not contain ingredients such ascorbic acid and citric acid, commonly used in packaged fruit products, as the ingredients list explains, "to promote color retention." *See Bell*, 982 F.3d at 476 ("[T]he context of the entire packaging is relevant."); *see also Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (consumers who are "interested in the actual ingredients can read the list").

---

[5] Plaintiff understates the first issue. Ascorbic acid is not a merely a potential "source" of vitamin C, it is vitamin C. *See* Mayo Clinic Staff, *Drugs and Supplements A to Z: Vitamin C*, Mayo Clinic, accessed Aug. 4, 2022, https://www.mayoclinic.org/drugs-supplements-vitamin-c/art-20363932#:~:text=Vitamin%20C%20(ascorbic%20acid)%20is,to%20your%20body's%20healing%20process. Indeed, the Products' label explicitly identifies ascorbic acid as vitamin C. (*See* Brew Decl. A.)

Because Plaintiff has not plausibly alleged facts showing that the Products' labels are materially misleading to reasonable consumers, Count I fails as a matter of law.

## II.   Plaintiff Fails to Plausibly Allege that Dole's Labeling Practices Are Unfair.

Plaintiff also claims that Dole violated the ICFA through "unfair acts or practices" by including ascorbic acid and citric acid in the Products "without including the phrase 'with added ingredients' to modify the 'in 100% fruit juice'" statement on the Products' label. (Compl. ¶ 56.) Under the ICFA, "[a] trade practice may be deemed unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive or unscrupulous; or (3) causes substantial injury to consumers." *Horist*, 941 F.3d at 280 (citation and quotation marks omitted). A plaintiff must show a practice meets one or more of these prongs to be considered unfair. *Id.* (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). Plaintiff does not and cannot make that showing.

### A.  The Products' labels do not offend Illinois public policy.

"A practice offends Illinois public policy if it is contrary to what 'is found in [Illinois's] constitution, its statutes, and its judicial decisions.'" *Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 743 (N.D. Ill. 2016) (quoting *Reed v. Farmers Ins. Grp.*, 720 N.E.2d 1052, 1057 (Ill. 1999)). Plaintiff fails to satisfy this standard for several reasons.

First, Plaintiff failed to identify any Illinois law or policy that Dole has "offended" by not including the modifying phrase "with added ingredients" on the Products' front label. The only potential sources of law Plaintiff cites are FDA regulations addressing the labeling for canned fruits, *see* 21 C.F.R. § 145.135, and "beverages that contain fruit or vegetable juice," *see* 21 C.F.R. § 101.30. These regulations do not govern the labeling of the Products: they are not canned, nor are they "beverages."[6] Thus, the Product labels do not violate Illinois law or policy. *See Batson v.*

---

[6] As explained in Section I.A., *supra*, the FDA's canned fruit regulations do not apply to the Products, which are packaged in plastic bowls.

*Live Nation Ent., Inc.*, 746 F.3d 827, 831-32 (7th Cir. 2014) (rejecting claims that an alleged anticompetitive "tying arrangement" offended Illinois public policy where it unquestionably did not violate antitrust law); *see also Phillips*, 173 F. Supp. 3d at 743 (dismissing unfair practices claim premised upon alleged violations of Illinois gambling laws where the games in question did not violate those laws, and thus did not violate any public policy).

Second, Plaintiff's unsupported assertion that Dole has "clandestinely add[ed] ingredients to the Fruit without adequately disclosing" that fact to consumers, (Compl. ¶ 60), is flat wrong. The Products clearly disclose that they contain ascorbic acid and citric acid, as well as other ingredients, in the ingredients list. (*See* Brew Decl. A.) And despite Plaintiff's hyperbolic suggestions about consumer safety, (*see* Compl. ¶ 60), Plaintiff does not allege that the ingredients themselves are in any way harmful or prohibited by Illinois policy. *See Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 772 & n.7 (S.D. Ill. 2010) (granting summary judgment on unfair practices claim where plaintiff could not identify any public policy prohibiting high fructose corn syrup as a sweetening agent and did not allege that it was harmful). To the contrary, as noted above, Plaintiff admits that "ascorbic acid may be a source of vitamin C" and "citric acid may be found naturally in citrus fruits." (Compl. ¶¶ 4, 6.)

Plaintiff may wish that the Products disclosed certain information in particular ways, but the fact that the labels clearly and accurately disclosed the Products' ingredients defeats any claim that Dole acted unfairly. *See, e.g., Anthony v. Country Life Mfg., LLC.*, 70 F. App'x 379, 382 (7th Cir. 2003) (dismissing claim that nutrition bar manufacturer engaged in unfair practices by including non-FDA approved "food additives" when the ingredients were disclosed on the bar's label and not alleged to be harmful in any way).

### B.  The Products are not immoral, unethical, oppressive, or unscrupulous.

Plaintiff likewise cannot show that Dole's conduct is immoral, unethical, oppressive, or unscrupulous. The relevant inquiry "is whether a defendant's conduct is 'so oppressive as to leave the consumer with little alternative except to submit to it[.]'" *Batson*, 746 F.3d at 833 (quoting *Robinson*, 775 N.E.2d at 961). As a matter of law, a practice does not satisfy this element "if a consumer can avoid the defendant's practice by seeking an alternative elsewhere." *Id*. Plaintiff's Complaint utterly fails to establish this element. She alleges that Dole's conduct "leave[s] the consumer with little alternative except to submit to it because consumers have no control over the representations [Dole] puts onto the Fruit's label and packaging." (Compl. ¶ 61.) But this completely ignores the fact that Plaintiff was not forced to purchase the Products, and indeed had a wide variety of options to choose from when purchasing packaged fruit products.

Illinois courts regularly dismiss claims that a business practice is unfair because of its alleged "oppressiveness" where consumers could have easily purchased a different product or service instead. *See, e.g.*, *Anthony*, 70 F. App'x at 382 (dismissing unfair practices claim because plaintiff "had the opportunity to compare the ingredients of the [defendant's] bars with various other nutritional bars and in no way suffered a lack of a meaningful choice necessary to establish unfairness") (collecting cases); *Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E.2d 602, 608-09 (Ill. 1996) (dismissing unfair practices claim based on "oppressively" high overdraft fees where plaintiff could have chosen a different bank). *Cf. Kremers*, 712 F. Supp. 2d at 772-73 & n.8 (granting summary judgment on unfair practices claim because "nobody is forcing [plaintiff] or anybody else to purchase 'Classic' Coke"). The Court should do the same here.

### C.  The Products do not cause substantial injury to consumers.

For the same reason, Plaintiff also fails to show a "substantial injury" from the allegedly unfair practice. To rise to the level of an unfair trade practice under Illinois law, an injury must be

"(1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided." *See Batson*, 746 F.3d at 834. If a consumer fails to plausibly allege that they could not have avoided the injury in question, she cannot satisfy the second or third prong of the unfair practice standard. *See id.* (affirming dismissal of unfair practices claim after concluding plaintiff failed to allege a substantial injury from hidden fees in a concert ticket because plaintiff could have easily avoided the fees by "opting [ ] for alternative entertainment"); *see also Kremers*, 712 F. Supp. 2d at 773 (holding plaintiff failed to establish either the second or third elements of unfairness because the alleged injury, if any, was one that plaintiff or any other consumer easily could have avoided by "simply drinking a different soft drink or other beverage.").

Furthermore, there are no plausible allegations that Plaintiff's injury, if any, was "substantial." Plaintiff states that she purchased the Products "on numerous occasions" at a price of just $3.29 per unit. (Compl. ¶ 13.) She alleges that her damages were the difference between what she paid and what, in her subjective view, the Products were worth. (Compl. ¶ 63.) Even with the false assumption that the Products had *no value* due to the alleged mislabeling, Plaintiffs' damages would be just $3.29 per purchase. This is hardly a "substantial injury." *See Kremer*, 712 F. Supp. 2d at 773 (concluding the alleged injury was not substantial where plaintiff had purchased, at most, 13 cans of "Classic" Coke per week); *see also W. Ry. Devices Corp. v. Lusida Rubber Prods., Inc.*, 2006 WL 1697119, at *6 (N.D. Ill. June 13, 2006) (concluding plaintiff did not suffer any substantial injury from defendants' unsolicited faxes).

Because Plaintiff has not plausibly alleged facts showing that Dole engaged in any unfair practice in its labeling of the Products, Count II of the Complaint also fails as a matter of law.

## III.  Plaintiff Fails to Plausibly Allege Actual Damage.

Claims under the ICFA require the plaintiff to plead (and eventually prove) that she

suffered "actual damages" because of the allegedly deceptive or unfair act. *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009). Here, Plaintiff's ICFA claims must be dismissed for the additional reason that the Complaint fails to allege facts establishing actual damage.

Plaintiff's theory of damages is that she paid a price premium for the Products as a result of Dole's use of the term "in 100% fruit juice" on the front of the label. (*See* Compl. ¶ 48.) But merely invoking the term "price premium" is insufficient; Plaintiff must allege actual facts demonstrating that she overpaid—and, therefore, did not receive the full value of her purchases— because of the deceptive practice. *See Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (holding that "conclusory allegations" of a price premium failed to adequately plead injury under New York consumer protection law); *Babaian v. Dunkin' Brands Grp. Inc.*, 2018 U.S. Dist. LEXIS 98673, at *17-18 (C.D. Cal. June 12, 2018) (same under California law); *Harris v. McDonald's Corp.*, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021) (same).

Here, Plaintiff has not adequately alleged facts to support her conclusory allegation that she paid a price premium. For example, Plaintiff does not plead examples of comparable products and prices without the alleged "premium." *See Colella*, 348 F. Supp. 3d at 143 (noting plaintiffs' failure to allege the amount of the price premium or the prices of non-premium products). Instead, Plaintiff baldly asserts that "consumers" would not have paid as much for the Products had they known the "truth" (Compl. ¶ 53), but this conclusory statement is insufficient to allege an injury, *see DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at *7-8 (S.D.N.Y. Jan. 23, 2018), and Plaintiff's own subjective willingness to pay (or not) is not an indicator of the objective economic value of the Product, *see Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018).

Because Plaintiff has not plausibly alleged that she paid a price premium, she has not pleaded a cognizable injury under the ICFA.

## IV.     Plaintiff's Common-Law Claims Also Fail as A Matter of Law.

Plaintiff's common-law breach of warranty and unjust enrichment claims are based on the same (flawed) theory of deception as her ICFA claims. Because the ICFA claims fail, these claims fail as well.

When a Plaintiff's claim for unjust enrichment "rests on the same improper conduct alleged in another claim," then the unjust enrichment claim must "stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516–17 (7th Cir. 2011); *see Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007). Here, Plaintiff's unjust enrichment claim is premised on the same allegedly deceptive conduct as her ICFA claims. (*See* Compl. ¶ 74 (reincorporating factual allegations underlying ICFA claims), ¶¶ 75-78 (repeating elements of unjust enrichment).) Consequently, her unjust enrichment claim fails because, as demonstrated above, the label is not deceptive or unfair, and the alleged misrepresentations are not material. *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015); *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 742 (N.D. Ill. 2015).

Likewise, Plaintiff's breach of warranty claim fails because, as explained above, no reasonable consumer believes that "in 100% fruit juice" on the label of these Products means—or is a warranty that—the Products do not contain ascorbic or citric acids. *See supra* Section I. Where breach of warranty claims are premised on the same alleged misstatements as an ICFA claim, both claims fail "[a]bsent a plausible allegation of deception." *Zahora*, 2021 WL 5140504, at *5 (warranty claim failed with ICFA claim where there was no plausible allegation that defendant's labeling was misleading); *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 674 (N.D. Ill. Mar. 31, 2016) (same).

V.     **Certain Aspects of the Complaint Fail Because Plaintiff Lacks Article III Standing.**

Plaintiff's Complaint should be dismissed in its entirety for the reasons discussed above. If any claim survives, however, Plaintiff's claims based on Products she does not allege she purchased and her request for injunctive relief must be dismissed because they exceed constitutional limits on the Court's jurisdiction.

A.     **Plaintiff lacks standing to sue for Products she did not purchase.**

Despite bringing this lawsuit against nine different Dole Fruit Bowl® Products, Plaintiff admits she has only purchased one of the Products: Dole Mixed Fruit. (*See* Compl. ¶ 13.) As a result, Plaintiff lacks standing to sue for the other eight Products that she has never purchased.

Article III standing is a question of subject-matter jurisdiction and requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In mislabeling cases, the majority of courts in this Circuit agree that putative class plaintiffs "are prohibited from overcoming the requirements of Article III standing simply by arguing that non-purchased products are substantially similar to purchased products." *Willard v. Tropicana Mfg. Co., Inc.*, 2021 WL 6197079, at *4 (N.D. Ill. Dec. 30, 2021) (collecting cases); *see also Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("Standing cannot be acquired through the back door of a class action." (citation omitted)). Because Plaintiff alleges that she has only purchased Dole's Mixed Fruit Product, Plaintiff lacks standing to assert claims against any of the other eight Products mentioned in the Complaint.

B.     **Plaintiff lacks standing to seek injunctive relief.**

To have standing to seek injunctive relief, a plaintiff must face a threatened injury that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). Here, Plaintiff alleges that "[h]ad the truth been known, consumers

18

would not have purchased the product at all, or would have paid less for them." (Compl. ¶¶ 53, 63). Now that she is aware of the allegedly deceptive labeling, she does not face a real or immediate threat of future harm and has no standing to seek injunctive relief. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014) (no standing for injunctive relief once plaintiff was aware of allegedly deceptive sales practice); *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at \*7 (N.D. Ill. Aug. 18, 2017) ("Most courts to have considered the issue agree with [defendant] that consumer plaintiffs cannot pursue injunctive relief if they are already aware of the alleged deceptive practice."); *Floyd v. Pepperidge Farm, Inc.*, 2022 WL 203071, at \*7 (S.D. Ill. Jan. 24, 2022) (no standing); *Zahora*, 2021 WL 5140504, at \*6 (same).

Thus, if any claim survives, the Court should, at minimum, dismiss Plaintiff's claim for injunctive relief.

## **CONCLUSION**

For the foregoing reasons, Dole respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice.

Dated: August 8, 2022

*/s/ Ruben I. Gonzalez*
FAEGRE DRINKER BIDDLE & REATH LLP
Sarah L. Brew
Tyler A. Young
Rory F. Collins
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
sarah.brew@faegredrinker.com
tyler.young@faegredrinker.com
rory.collins@faegredrinker.com

Ruben I. Gonzalez (Bar No. 6320689)
320 South Canal Street, Suite 3300
Chicago, Illinois 60606
ruben.gonzalez@faegredrinker.com
*Attorneys for Defendant Dole Packaged Foods, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 8, 2022, electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT** with the Clerk of the USDC, Southern District of Illinois, using the PACER, which will send notification of such filing to all attorneys of record.

*/s/ Ruben I. Gonzalez*
Ruben I. Gonzalez